UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY COLAR et al.,

        Plaintiffs,        Case No. 1:12-cv-1269

v.        Honorable Janet T. Neff

DANIEL HEYNS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by four state prisoners pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiffs leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiffs' action will be dismissed on grounds of immunity and failure to state a claim.

**Factual Allegations**

Plaintiffs Anthony Colar, James Jackson, Kyle B. Richards and J D Currelly presently are incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). They sue the following Defendants: the MDOC; MDOC Director Daniel Heyns; IBC Warden Ken McKee; IBC Assistant Resident Unit Supervisor Brian Hadden; IBC Resident Unit Manager (unknown) Mote; IBC Assistant Deputy Warden (unknown) Triewiller; Governor Rick Snyder; and Lieutenant Governor Brian Calley.

Plaintiffs allege that they are members of a political organization, the American Liberation Organization (ALO). According to the complaint, the ALO advocates for "'sovereign' citizens," and is dedicated to "expos[ing] and correct[ing] corruption and oppression caused by modern governmental systems of our era." (Compl., docket #1, Page ID#3.) Plaintiffs allege that "[s]overeign citizenship is a[n] ideology, and legitimate belief in the legal and national emancipation, of persons and their property and estate/land. Promoting principles of personal responsibility and legality." (*Id.*) The complaint identifies Plaintiffs Colar and Currelly as lifelong members and executive officers of the ALO, Plaintiff Jackson as a lifelong member and vice-president of the ALO, and Plaintiff Richards as lifelong member and president of the ALO.

Plaintiffs allege that they have petitioned the MDOC and prison authorities for the right to assemble in prison. Their request was denied, ostensibly in violation of both the First Amendment and the Equal Protection Clause. Plaintiffs seek injunctive relief, together with compensatory and punitive damages.

**Discussion**

I. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the MDOC.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment

Plaintiffs contend that, in denying their ability to hold group meetings, Defendants have denied Plaintiffs' First Amendment rights to freedom of association and assembly.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, rights inconsistent with proper incarceration are not retained. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). As the Supreme Court repeatedly has recognized, freedom of association and assembly are among the rights least compatible with incarceration. *See Bazzetta*, 539 U.S. at 131 (citing *Jones*, 433 U.S. at 125-26, and *Hewitt v. Helms*, 459 U.S. 460 (1983)). Curtailment of those freedoms "must be expected in the prison context." *Id.*

To the extent that prisoners retain any rights to associate or assemble with other prisoners, a question the Supreme Court has never definitively answered, prison officials may impinge on those rights if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987), *cited in Bazzetta*, 539 U.S. at 132; *see also Beard v. Banks*, 548 U.S. 521, 528-29 (2006). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4)

whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-90. As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Bazzetta*, 539 U.S. at 132; *Shaw*, 532 U.S. at 230; *Washintgon v. Harper*, 494 U.S. 210, 224 (1990); *Turner*, 482 U.S. at 84-96; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones*, 433 U.S. at 125-126; *Pell*, 417 U.S. at 826-27. These concerns are even stronger when a state penal institution is involved. *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998). Moreover, when a prisoner seeks to overturn a prison regulation, the burden is on the prisoner to disprove the validity of the prison restriction. *Bazzetta*, 539 U.S. at 132.

The Supreme Court has "recognized that 'communication with other felons is a potential spur to criminal behavior.'" *Bazzetta*, 539 U.S. at 134 (quoting *Turner*, 482 U.S. at 91-92). In addition, the Court has upheld a prison ban on group meetings of a prison-inmate labor union, recognizing the potential for illegal activity associated with the union's purpose. *See Jones*, 433 U.S. at 128-29.

Here, Plaintiffs seek to have group meetings focused on a political ideology based on the "sovereign citizen" movement. The "sovereign citizen movement" is well documented. The Federal Bureau of Investigation has classified "sovereign citizens" as domestic terror threats because they are anti-government extremists. *See* "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI LAW ENFORCEMENT BULLETIN (September 2011), *available at* http://www.fbi.gov/stats-services/ publications/law-enforcement-bulletin/september-2011/sovereign-citizens (last visited Jan. 2, 2013). Moreover, in the context of challenges to income-tax

prosecutions, the Supreme Court has held that beliefs about taxation held by self-described sovereign citizens are unreasonable and, when acted on, illegal. *See Cheek v. United States*, 498 U.S. 192, 199 (1991) (reciting and rejecting the movement's belief in the unconstitutionality of income taxation under multiple theories).

As the Supreme Court has recognized, prisons "are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance." *Jones*, 433 U.S. at 129. Given the fundamental belief of the sovereign-citizen movement – that the government lacks the authority to govern them – the MDOC has a patently obvious penological interest in barring inmate meetings and communication that would advance the movement's beliefs. *See Turner*, 482 U.S. at 89. "The interest in preserving order and authority in the prison is self-evident." *Jones*, 433 U.S. at 132.

Second, Defendants' restriction leaves numerous other means by which Plaintiffs may exercise their First Amendment rights. Plaintiffs have not alleged that Defendants have penalized Plaintiffs for holding their views individually; they allege only that they are prevented from meeting with other prisoners to promote those views. *See Jones*, 433 U.S. at 132 (holding that such a distinction demonstrates that the restriction is narrowly drawn to meet the penological interest). Similarly, while Defendants have limited Plaintiffs from assembling and associating on this issue, they have not prohibited all associations between prisoners. As a consequence, it is apparent that Defendants' actions are both reasonably related to the legitimate penological interest and permit alternative means of exercising Plaintiffs' First Amendment rights. *Id.*[1]

---

[1] Moreover, even had Defendants barred all First Amendment expression with respect to the sovereign-citizen movement, Plaintiffs could not demonstrate solely on that basis that the regulation was unreasonable. *See Bazzetta*, 539 U.S. at 135 (recognizing that the availability of alternative means of communication is not conclusive).

Third, accommodation of Plaintiffs' request to meet and communicate for the purpose of advancing an ideology that undermines respect for the rules of government has the potential to impact the security of the institution. *Cf. Jones*, 433 U.S. at 132 (concluding that the presence of a labor union could reasonably be found to be detrimental to the order and security of a prison). When matters of security are concerned, the Supreme Court has held that courts must be "'particularly deferential' to prison administrators' regulatory judgments." *Bazzetta*, 539 U.S. at 135 (quoting *Turner*, 482 U.S. at 90). Where, as here, the exercise of Plaintiffs' right to assemble and associate to promote an ideology that challenges order and security, it undoubtedly impacts prison guards and the allocation of prison resources. *Id.*

Finally, the *Turner* test requires Plaintiffs to point to an "obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal. Plaintiffs have not alleged that alternatives exist that would meet the security considerations, much less that such an alternative would have a *de minimis* cost. Plaintiffs allegations, therefore, fail to meet the last prong of the *Turner* test.

For all these reasons, Plaintiffs fail to state a valid First-Amendment claim.

### B. Equal Protection

Plaintiffs next allege that Defendants' refusal to allow group meetings of the ALO violates their right to equal protection. They assert that groups such as MYCURE, IPAS and the

American Friends Committee freely operate in the prisons.[2] They contend that they are being discriminated against on the basis of their political beliefs.

As the Supreme Court discussed in *Jones*, 433 U.S. at 133, the fact that other groups are allowed to operate in the prison does not suggest that a prohibition of a sovereign-citizen group violates equal protection. Because the prison environment is not a public forum, prison officials are not obligated to demonstrate that a particular group is harmful before barring meetings of that group. *Id.* at 133-36. Instead, to demonstrate an equal-protection claim, Plaintiffs must show that prison officials have no rational basis for their distinctions between organizational groups. *Id.* at 134. As previously discussed, Defendants clearly had a rational and legitimate basis for their ban of group meetings of the ALO. Plaintiffs' Equal Protection claim therefore is without merit.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiffs' action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

---

[2]Plaintiffs do not identify the purpose of any of these organizations, and the Court is without any knowledge of MYCURE or IPAS. The Court takes judicial notice that the American Friends Service Committee is a long-established Quaker organization promoting peace and justice, including advocacy for prisoner rights and criminal justice reform. In any event, Plaintiffs fail entirely to allege that any of the listed organizations is similar to ALO in that it advocates the refusal to recognize the sovereignty and jurisdiction of local, state and federal governments.

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   January 11, 2013              /s/ Janet T. Neff
                                                                         Janet T. Neff
                                                                        United States District Judge